SHAKUR D. GANNAWAY,              :    CIVIL ACTION
          Plaintiff,            :    NO. 09-2688
                                :
                                :
                                :
     v.                         :
                                :
NICHOLAS KARETAS, et al.,        :
          Defendants.           :




                    M E M O R A N D U M


EDUARDO C. ROBRENO, J.                        MARCH 30, 2011


## I.    INTRODUCTION

          Pro Se Plaintiff Shakur D. Gannaway ("Plaintiff" or

"Gannaway") initiated the instant action under 42 U.S.C. § 1983

against the Borough City of Reading, the Borough of City of West

Reading and individual law enforcement Officers Nicholas Karetas,

Matthew Beighley, Joseph M. Brown, and Christopher Dinger.

Plaintiff filed an amended complaint purporting to add additional

Defendants, including two civilians, as well as additional law

enforcement.  After filing the amended complaint, the Court

issued upon Plaintiff a rule to show cause as to why these extra

Defendants were added without leave of the Court.  The Rule was

granted, and the additional parties were dismissed.

Plaintiff alleges that his Fourth Amendment Right to be free from unreasonable seizures was violated when officers tackled him upon effectuating an arrest. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

_____

## II. BACKGROUND

Plaintiff's excessive force claim stems from officers' arrest of Plaintiff on May 25, 2009. (Pl.'s Dep. at 37:19-21.) On that date, officers received a radio call reporting an armed robbery at a Lukoil. Officer Chris Dinger chased the car suspected to be carrying the perpetrators of the armed robbery, and Plaintiff was a passenger in this vehicle. (Id. at 39:3-21.) This vehicle led officers on a chase, but it eventually stopped upon hitting two parked cars. (Id. at 40:9-22.) After the accident, Plaintiff jumped out the window of the car because he was unable to open the door. (Id. at 42:13-14.) Plaintiff ran from police until a minivan, driven by civilians, cut him off and made him lose his balance. (Id. at 42:17-20.) At this point, Plaintiff began falling and a police officer tackled Plaintiff.[1]

_____

[1] It is unclear whether Plaintiff was tackled by one or more officers because he first says that one officer tackled him and, when he came to, there were many officers around. (Pl.'s Dep. at 43-47.) However, later in his deposition, Plaintiff states that two or three officers tackled him. (Id. at 48:3-5.) Plaintiff's statements create confusion, and counsel for the Defendants has tried to clarify this confusion. When Plaintiff

(<u>Id.</u> at 43:6-9.)

Plaintiff states that when he was tackled, he fell on his face and knees. (<u>Id.</u> at 61:10-14.) Plaintiff recalls scraping his face and cracking his tooth. (<u>Id.</u> at 64:18-23.) Also, when falling, he hit his shoulder on nearby steps. (<u>Id.</u> at 79:2-6.) Once Plaintiff was down, he explained that "three or four of them" were "holding [his] arms down on the ground." (<u>Id.</u> at 47:19-24.) Plaintiff goes on to state that he "know[s] for a fact it was three or four people . . . on top of [him] even when he was in handcuffs." (<u>Id.</u> at 49:8-15.) Plaintiff claims that when the officers were holding him down, one officer had his knee on Plaintiff's back thus causing back pains and re-injuring his back from a previous accident. (<u>Id.</u> at 73:3-9.) Additionally, later in his deposition, Plaintiff states that there were fifteen or sixteen officers around him holding tasers. (<u>Id.</u> at 56:9-12.)

Once officers had Plaintiff under control they took him

───────────────────

was asked to clarify how many officers actually tackled him he stated that two or three "grabbed [him] to take [him] into custody." (<u>Id.</u> at 5-7.) Additionally, Plaintiff stated that he thinks more than one officer must have actually tackled him because of the impact with which he hit the ground. (<u>Id.</u> at 58:3-18.) Counsel for the Government asked Plaintiff if it could have been one officer even though the impact was great. (<u>Id.</u>) In response, Plaintiff stated "I'm not even sure. I know it was three or four of them around me." (<u>Id.</u>) Looking at Plaintiff's testimony as a whole, it appears that one officer actually tackled him to the ground and then other officers gathered around and assisted by holding Plaintiff on the ground. Ultimately, whether one or more officers "tackled" Plaintiff is not material to the disposition of this motion.

to West Reading Hospital.  (Id. at 80:7-10.)  Plaintiff was then detained and, on May 26, 2010, a jury found Defendant guilty of charges related to the robbery to which the officers were responding on the day of the arrest.

On June 1, 2010, Defendants were instructed to depose Plaintiff.  Shortly after Defendants deposed Plaintiff, they filed their motion for summary judgment, and the Court held a telephone conference to determine if Plaintiff needed additional discovery.  On January 11, 2011, Plaintiff filed a response to Defendants' motion for summary judgment.  Defendants' motion is now ripe for review.

## III. DISCUSSION

Defendants bring a Motion for Summary Judgment, arguing that Plaintiff's claim fails as a matter of law.  Defendants argue that, pursuant to Fed. R. Civ. P. 56(c), Plaintiff's claim cannot survive summary judgment because he was not deprived of a constitutional right.  The Court will address the relevant legal standards.  Next, taking the facts in the light most favorable to the Plaintiff, the Court will address Plaintiff's claim.

### A.  Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion
for summary judgment will not be defeated by 'the mere existence'
of some disputed facts, but will be denied when there is a
genuine issue of material fact."  Am. Eagle Outfitters v. Lyle &
Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

        In undertaking this analysis, the court views the facts
in the light most favorable to the nonmoving party.  "After
making all reasonable inferences in the nonmoving party's favor,
there is a genuine issue of material fact if a reasonable jury
could find for the nonmoving party."  Pignataro v. Port Auth. of
N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance
Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).


        B.    42 U.S.C. § 1983 Standard

        Section 1983 provides a cause of action for an
individual whose constitutional or federal rights are violated by
those acting under color of state law.[2]  See generally Gonzaga

───────────────

        [2]     Section 1983 provides, in pertinent part:

        Every person who, under color of any statute,

Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  The threshold inquiry

in a § 1983 suit is whether the Plaintiff has been deprived of a

right "secured by the Constitution and laws" of the United

States.  Baker v. McCollan, 443 U.S. 137, 140 (1979).  Absent a

violation of a right secured by the Constitution or the laws of

the United States, there can be no cause of action under § 1983.

Reichley v. Pa. Dep't of Agric., 427 F.3d 236, 244 (3d Cir. 2005)

(citing West v. Atkins, 487 U.S. 42, 48 (1988)).  As a starting

point, therefore, the Court must determine whether Plaintiff was,

indeed, deprived of any rights secured by the Constitution or

laws of the United States.


        C.   Alleged Deprivation of Plaintiff's Fourth Amendment
             Rights

        Plaintiff alleges that he was subjected to unreasonable

force in violation of his Fourth Amendment rights.  In

particular, Plaintiff claims that his Fourth Amendment right to

_____

                ordinance, regulation, custom, or usage, of
                any State or Territory or the District of
                Columbia, subjects, or causes to be subjected,
                any citizen of the United States or other
                person within the jurisdiction thereof to the
                deprivation of any rights, privileges, or
                immunities secured by the Constitution and
                laws, shall be liable to the party injured in
                an action at law, suit in equity, or other
                proper proceeding for redress . . . .

                42 U.S.C. § 1983.

be free from unreasonable seizures was violated because Defendants tackled Plaintiff when effectuating his arrest.

In evaluating a claim for excessive force, an "objective reasonableness" test should be employed. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id.</u> A totality of the circumstances test is applied in determining whether the amount of force used to effectuate an arrest was objectively reasonable. <u>Id.</u> at 396. This determination requires the court to balance the individual's interest against the government's, weighing three non-exclusive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> at 396.

Moreover, whether the force used was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is

necessary in a particular situation." Id. at 396-97.

Accordingly, "'[n]ot every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates the

Fourth Amendment.'" Id. at 396 (quoting Johnson v. Glick, 481

F.2d 1028, 1033 (2d Cir. 1973)).

Here, Plaintiff was one of the passengers in a car that

officers were chasing in response to a report of an armed

robbery, a felony under Pennsylvania law. The car was driving at

a high rate of speed and crashed into two parked cars. (Pl.'s

Dep. at 39:17-18, 40:20-24.) After crashing, Plaintiff jumped

out of the window of the car and ran from the police. (Id. at

41:1-3, 42:13-20.) While officers were chasing Plaintiff, a

minivan driven by civilians cut Plaintiff off, hit Plaintiff's

foot and shin, and caused him to "los[e] his footing." (Id. at

42:13-20, 43:13-18.) At this point, while Plaintiff was falling,

an officer jumped on Plaintiff. (Id. at 45:9-10, 46:1-2.)

Plaintiff is sure that one officer jumped on him, and

he believes it may have been more than one given the impact.

(Id. at 58:6-18.) Once on the ground, Plaintiff stated that

three or four officers were holding his arms and legs down, and

he felt one or more knees on his back. (Id. at 47:21-23, 76:12-

14, 78:8-10.) Plaintiff argues that it was unnecessary to tackle

him because he was not an immediate threat given that he did not

have a weapon and his pants were falling down thus he "wasn't

going anywhere." (Id. at 50:14-23, 70:1-8.)

Based on the totality of the circumstances, the officers acted objectively reasonable when they tackled and handcuffed Plaintiff. Important considerations include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether Plaintiff actively resisted arrest or attempted to evade arrest by flight. Here, the crime for which Plaintiff was pursued was a felony—armed robbery. When officers chased Plaintiff, he was fleeing the scene of the crime. Under the circumstances, it was objectively reasonable for them to believe Plaintiff was armed and posed a threat to others. See Carita v. Kandianis, No. 93-2850, 1994 WL 583213, at *11 (E.D. Pa. Oct. 20, 1994), aff'd, 65 F.3d 161 (3d Cir. 1995) (holding that it was reasonable to have a dog chase and tackle a suspect who was arrested for drunk driving and then escaped police custody); Tracy v. Freshwater, 623 F.3d 90, 97-98 (2d Cir. 2010) (holding that it was reasonable to dive on fleeing suspect who was pulled over for a traffic violation).

Consequently, the force used against Plaintiff was non-lethal, necessary, and justified to accomplish the arrest of Plaintiff, a suspected armed robber.[3]

---

[3]    Even if Plaintiff could establish a constitutional violation, Plaintiff could not successfully bring a claim for municipal liability because he has not identified an

**IV. CONCLUSION**

        Based on the aforementioned, the Court will grant summary judgment as to all Defendants.

---

unconstitutional custom or policy enacted or enforced by the municipal defendants.  <u>See</u> Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978) (explaining that a municipality is liable under § 1983 only when the Plaintiff suffers a constitutional deprivation that results from an official custom or policy).  Additionally, Plaintiff cannot successfully bring a claim against the officers because of the applicability of qualified immunity.  Pearson v. Callahan, 555 S. Ct. 223 (2009) (holding that qualified immunity protects government officials insofar as their conduct does not violate clearly established rights of which a reasonable person would have known).